UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-00185-TBR

JOSHUA LANE KING, PLAINTIFF

v.

DR. SHASTINE TANGILAG, *et. al.*, DEFENDANTS

**MEMORANDUM OPINION**

Joshua Lane King, a state inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action against two Kentucky Department of Corrections personnel and two Kentucky State Penitentiary personnel for allegedly violating his rights under the Eighth Amendment. Upon initial review under 28 U.S.C. § 1915A, the Court determined that King's claim for injunctive relief could proceed against these four Defendants[1] in their official and individual capacities and that his claim for monetary damages could proceed against the four Defendants only in their individual capacities. [DN 7.] All Defendants have now moved for summary judgment as to those claims. Because there is no genuine dispute of material fact, and Defendants are entitled to judgment as a matter of law, their Motions for Summary Judgment, [DN 45; DN 50], are **GRANTED**.

BACKGROUND

At the time the events giving rise to King's claims began, King was incarcerated at the Kentucky State Penitentiary (KSP). [*See* DN 1 (Complaint).] On March 31, 2015, during an annual physical examination, King told Dr. Shastine Tangilag that he had a "hernia" on his abdomen that was getting larger. [DN 47 at 3 (Kentucky Department of Corrections Medical

---

[1] King's claims against the fifth Defendant, Jennifer Whalen, did not survive initial review under 28 U.S.C. § 1915A, and Whalen was dismissed from the suit. [DN 7 at 6–8.]

1

Records).] Dr. Tangilag wrote in King's records that he had a "movable, nontender, solid mass on the abdomen measuring [about] 3 inches above" the navel. [*Id.* at 4.] Dr. Tangilag ordered an ultrasound, which was performed the same day. [*Id.*] The ultrasound report, dated April 1, 2015, reflects that the mass was "a 3.1 by 1.3 by 3.1 centimeters solid heterogeneous cystic area" and stated that "[m]alignancy cannot entirely be excluded. The need for CT or MRI should be determined clinically." [*Id.* at 6.] At his next appointment on May 14, 2015, King again saw Dr. Tangilag. [*Id.* at 7–9.] King complained of abdominal pain in "the epigastric area," but indicated that "[h]e was in a fight in [M]arch and was punching somebody. He thought he must have pulled a muscle." [*Id.* at 7.] Dr. Tangilag reported that the sebaceous mass cyst on King's abdomen was "non tender," and noted that there was no "weight loss, nausea, abdominal bloating, [or] rectal bleeding." [*Id.* at 7–8.] Dr. Tangilag prescribed Tylenol as needed for pain. [*Id.* at 8.]

On May 28, 2015, King filed an Inmate Grievance related to "Quality of Health Care." [*Id.* at 21–22.] King stated that he was in severe pain and requested further testing to determine whether the sebaceous cyst on his abdomen was malignant, as the ultrasound report concluded that malignancy could not be definitively ruled out. [*Id.* at 22.] King also requested surgery to have "this very painful cyst removed." [*Id.*]

That same day, King saw Karen Vickery, an Advanced Practice Registered Nurse (APRN) at KSP. [*Id.* at 10.] King reported abdominal "pain related to [the] cyst near [his] epigastric area." [*Id.*] King again discussed the fight he was in in March and told APRN Vickery that he believed he may have pulled a muscle in his stomach as a result. [*Id.*] King reported that he was not taking the Tylenol as previously prescribed by Dr. Tangilag because it was not

working. [*Id.*] APRN Vickery changed King's pain medication to Ibuprofen and wrote that she would "cont[inue] to monitor" him. [*Id.*]

The Kentucky Department of Corrections (KDOC) Health Services Administrator, Cookie Crews, responded to King's grievance in a letter dated June 5, 2015. [*Id.* at 15.] She wrote that King's records indicated that he was seen by APRN Vickery on May 28, that his medication was changed, and that he would continue to be monitored. [*Id.*] She further instructed King that, "[s]hould [he] not feel relief[,] please contact this office." [*Id.*]

On June 17, 2015, King was treated by Jill Shelton, a Registered Nurse (RN) at KSP. [*Id.* at 11.] At that appointment, King told Shelton that the Ibuprofen was not helping and asked if they could talk about removing the cyst on his abdomen. [*Id.*] Shelton noted that King continued to complain of pain in the epigastric area and that King had "tenderness upon palpation," but that there was no redness or swelling. [*Id.*] The next day, on June 18, 2015, Dr. Tangilag followed up with King. [*Id.* at 12.] King reported experiencing severe pain in his stomach ever since his fight in March and "describe[d] the pain as sharp, constant, [and] aggravated by movement." [*Id.*] Dr. Tangilag assessed that King did not have an acute abdomen and concluded that further imaging was not warranted. [*Id.*] She noted that the ultrasound performed on March 31 did not indicate a hernia, and that the sebaceous cyst was "unlikely to be the cause of his abdominal pain." [*Id.*] Dr. Tangilag also wrote that she and King had a long conversation about his plan of care and that she would continue to monitor him. [*Id.*]

In a letter dated July 27, 2015, Denise Burkett, APRN, the Acting Clinical Director at the KDOC, responded to a letter King sent to the Health Services Division on June 15, 2015. [*Id.* at 14.] She advised him that, on July 2, 2015, "the Health Care Grievance Committee recommended that [he] be referred for further testing. Further testing will determine your plan of

care." [*Id.* at 14, 24–25.] King filed a Grievance Appeal Form relating to this determination on July 7, 2015. [*Id.* at 23–24.] Therein, he stated that the Health Care Grievance Committee's conclusion that King would get further testing only resolved half of his grievance, because he additionally sought to have surgery for the removal of the cyst. [*Id.* at 24.]

On July 30, 2015, APRN Vickery again saw King again and noted his continued complaints of abdominal pain related to his sebaceous cyst. [*Id.* at 16.] She further stated that she would consult with Dr. Tangilag regarding the need for further imaging of King's cyst. [*Id.*]

Between July 30, 2015 and August 12, 2015, King was transferred from KSP to the Eastern Kentucky Correctional Complex (EKCC). [*See id.* at 18.] After his arrival, he was seen on August 12, 2015 by Courtney Elam, APRN. [*Id.* at 18–19.] APRN Elam noted that King's medical records contained a note from Dr. Tangilag at KSP for King's future providers at EKCC. [*Id.* at 18.]. In that note, Dr. Tangilag stated that King "was concerned about the . . . cyst . . . and wants to have a CT scan done to rule out malignancy. [Dr. Tangilag] discussed this case with Dr. Lewis" and concluded that "[f]urther imaging is not warranted at this time. He does not present with [signs and symptoms] that are concerning for GI malignancy. He can be seen regularly to monitor the size of the cyst." [*Id.*]

During his visit with APRN Elam, King again stated that he wished to have the cyst removed. [*Id.*] APRN Elam advised King that "additional imaging and removal of cyst is not indicated at this time. [King was] advised to monitor [the] site and notify medical staff of increase in size or new symptoms." [*Id.*] Additionally, the EKCC medical staff would continue to monitor the site. [*Id.*]

In a letter dated September 15, 2015, Burkett informed King that she "reviewed [his] electronic health record encounters with APRN Vickery and Dr. Tangilag at KSP and then

APRN Elam at EKCC." [*Id.* at 20.] She told King that she had "been in correspondence with APRN Elam and further testing (CT scan of the abdomen) will be ordered as outlined by the Health Care Grievance Committee Recommendations." [*Id.*] Also on September 15, APRN Elam saw King for abdominal pain, noted in his records that King stated Ibuprofen was not helping, and wrote that she would request a CT scan of King's abdomen. [*Id.* at 26.]

The CT scan of King's abdomen and pelvis was performed on September 25, 2015. [*Id.* at 28–29.] The pathology report states that all findings were "normal" and "unremarkable." [*Id.* at 28.] No pelvis masses were detected, nor were any "inflammatory changes" found. [*Id.*] The impression of the CT was "[n]egative." [*Id.* at 29.] APRN Elam discussed the results of the CT scan with King on October 8, 2015. [*Id.* at 30.] She informed him "that [the] CT was negative," and noted that King was "doing well without complaint." [*Id.*]

Proceeding *pro se* and *in forma pauperis*, King filed this action against Dr. Tangilag, APRN Vickery, Burkett, and Dr. Lester Lewis,[2] bringing a claim for deliberate indifference to a serious medical need under the Eighth Amendment. [*See* DN 1 at 1–5.] With discovery now closed,[3] Defendants move for summary judgment. [*See* DN 45 (Burkett's Motion for Summary Judgment); DN 50 (Dr. Tangilag, APRN Vickery, and Dr. Lester Lewis's Motion for Summary Judgment).][4] King opposed those motions, [DN 52], and Defendants replied, [DN 54 (Burkett's

---

[2] Though King also brought suit against Jennifer Whalen, his claims against her were dismissed upon the Court's initial review of King's complaint pursuant to 28 U.S.C. § 1915A. [DN 7 at 6–8.]
[3] King alleges in his response that Dr. Lewis "failed to produce documents and failed to comply with discovery request (interrogatories)." [DN 52 at 5.] However, there is no evidence in the record as to what discovery requests King sent to Dr. Lewis or whether those requests were properly served. Moreover, King did not file a motion to compel Dr. Lewis to participate in discovery. Accordingly, the Court is unable to determine the potential impact of King's allegations.
[4] King argues, in part, that Dr. Tangilag, Dr. Lewis, and APRN Vickery's motion for summary judgment was filed after the dispositive motion deadline set by the Court had passed, and therefore must be disregarded. [DN 52 at 2–6, 9 (King's Response).] King is correct that, in its April 6, 2016 Scheduling Order, the Court set the dispositive motions deadline on September 6, 2016, [DN 34], and that Dr. Tangilag, Dr. Lewis, and APRN Vickery filed their motion on September 13, 2016. [DN 50.] However, those Defendants filed a motion for extension of time to file dispositive motions on September 6, 2016, [DN 44], which the Court later granted on December 29, 2016. [DN 65.] Accordingly, the Court finds that Defendants' motion was timely filed.

Reply); DN 53 (Dr. Tangilag, APRN Vickery, and Dr. Lewis's Reply).] After King filed "responses" to Defendants' replies, [DN 55; DN 58,] Defendants filed motions to strike those filings as impermissible sur-replies. [DN 56; DN 60.] King responded to those motions to strike, [DN 61.]

STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the parties moving for summary judgment, the Defendants must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of King's claims. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the Defendants satisfy their burden of production, King "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show

specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324

DISCUSSION

King sues Clinical Director Burkett, Dr. Tangilag, APRN Vickery, and Dr. Lewis under 42 U.S.C. § 1983 for violating his Eighth Amendment rights. [*See* DN 1 at 1–6.] First, King alleges that Dr. Tangilag initially did not treat his abdominal pain or order further testing and repeatedly refused his requests for surgery. [*Id.* at 4.] Second, King alleges that APRN Vickery failed to remove the cyst or test for malignancy after she interpreted his ultrasound results and examined him. [*Id.*] Further, King alleges that APRN Vickery lied to him on July 29 when she told him that she would order further testing because he was later told in August that no testing was ordered. [*Id.*] Third, King alleges that Burkett, as the KDOC Clinical Director, "authorized, approved, or acquiesced KSP staff treating [him] with deliberate indifference to [his] serious medical needs, by not interfering, like she said she would in written correspondence." [*Id.* at 6.] Moreover, King alleges that Burkett instructed the medical staff at the EKCC not to order further testing or surgery, but only to treat King's pain. [*Id.*] Fourth and finally, King alleges that Dr. Lewis overrode the decision of the Health Care Grievance Committee that further testing should be ordered by instead instructing EKCC staff not to order such testing and to treat his cyst only with Ibuprofen and future monitoring. [*Id.*]

Section 1983 creates a private right of action "against officials who, under the color of state law, deprive individuals of their constitutional rights." *Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016) (citing 42 U.S.C. § 1983). There is no genuine dispute that the Defendants were acting under the color of state law at the time of their interactions with King. Instead,

Defendants maintain that none of them deprived King of his rights under the Eighth Amendment. Viewing the record in the light most favorable to King, the Court agrees.

"The Eighth Amendment prohibits the imposition of 'cruel and unusual punishments' upon prisoners." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting U.S. Const. amend. VIII). To establish liability under the Eighth Amendment for a claim based on denial of medical care, the type of claim King brings in this action, King must show that the Defendants "acted with deliberate indifference toward his serious medical needs." *Cobbs v. Pramstaller*, 475 F. App'x 575, 580 (6th Cir. 2012). This determination encompasses both an objective and a subjective component. First, to satisfy the objective component, King must "establish the existence of a 'sufficiently serious' medical need." *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004)). "Seriousness is measured objectively, in response to 'contemporary standards of decency.'" *Id.* (citing *Hudson v. McMillian,* 503 U.S. 1, 8 (1992)). In essence, King "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)).

Second, the subjective component requires King to show that the Defendants acted with deliberate indifference, meaning that they "subjectively perceived facts from which to infer substantial risk to [King], that [they] did in fact draw the inference, and that [they] then disregarded that risk." *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 540 (6th Cir. 2008) (quoting *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001)). Deliberate indifference can exist "whether [it] is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).

Specifically, "[d]eliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith error." *Reilly*, 680 F.3d at 624 (citing *Whitley v. Albers,* 475 U.S. 312, 319 (1986)).

Here, even assuming, for the sake of argument, that King can clear the first hurdle of showing a serious medical need, he cannot clear the second. Specifically, King has not shown that any of the Defendants were deliberately indifferent to his alleged serious medical needs. King was seen by Dr. Tangilag three times prior to his transfer to EKCC, on March 31, May 14, and June 18. [DN 47 at 3, 7, 12.] He was seen by APRN Vickery twice, on May 28 and July 30. [*Id.* at 10, 16.] Upon first examining the cyst, Dr. Tangilag ordered an immediate ultrasound. [*Id.* at 3–5.] After King complained of abdominal pain, Dr. Tangilag prescribed him Tylenol. [*Id.* at 9.] When King reported that the Tylenol was not working, APRN Vickery changed his prescription to Ibuprofen. [*Id.* at 10.] Moreover, Dr. Tangilag repeatedly found that the cyst on King's abdomen was "unlikely to be the cause of his" pain, [*id.* at 13], and that King did "not present with [signs and symptoms] that are concerning for GI malignancy. [*Id.* at 18.] However, both Dr. Tangilag and APRN Vickery consistently noted that King would be continually monitored for any signs of growth or change in the cyst.

King claims that all Defendants ordered that no further testing was warranted after the Healthcare Grievance Committee recommended that further testing should occur, and therefore that "all Defendants were actively involved in stopping the ordered imaging and treatment." [DN 52 at 6–8 (King's Response).] Specifically, it appears that King is referring to the delay in time between when the Health Care Grievance Committee opined that further testing should be performed and when his providers actually ordered further testing. Burkett informed King that "the Health Care Grievance Committee recommended that you be referred for further testing" in

a letter dated July 27, 2015. [DN 47 at 14.] However, when APRN Elam saw King on August 12 after his transfer to EKCC, she noted that, based on the note from Dr. Tangilag in King's chart and on her treatment of King, further testing was not indicated at that time. [*Id.* at 18.] In another letter, dated September 15, 2015, Burkett informed King that she had reviewed the records of his appointments with Dr. Tangilag at KSP and APRN Elam at EKCC, that she had contacted APRN Elam, and that "further testing (CT scan of the abdomen) will be ordered as outlined by the Health Care Grievance Committee Recommendations." [*Id.* at 20.] The CT scan was performed on September 25, 2015. [*Id.* at 28–29.] In sum, approximately two months elapsed between the time when further testing was ordered and when it was ultimately performed.

However, where, as here, "a deliberate indifference claim is based on a prison's failure to treat a condition *adequately* or on a determination by medical personnel that medical treatment was unnecessary, a plaintiff must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Cobbs*, 475 F. App'x at 580 (internal quotation marks omitted) (quoting *Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 897 (6th Cir. 2004)). Though King alleges that the Defendants delayed conducting further testing on his abdominal cyst after it was recommended, he has not shown that this delay harmed him in any way. Crucially, the results of the further testing were "normal" and "unremarkable." [DN 47 at 28.] The pathology report characterized the results as "[n]egative." [*Id.* at 29.] Moreover, after APRN Elam talked about the results with King on October 8, 2015, she noted that King was "doing well without complaint." [*Id.* at 30.] Therefore, though King repeatedly alleges that the additional testing was "unreasonabl[y] and 'unnecessar]ily] delay[ed]," [DN 58 at 6 (King's Sur-reply)], he has provided no evidence that any such delay had a "detrimental effect." *Cobbs*, 475 F. App'x at 580.

With regard to King's claim that his medical providers denied him surgery to remove the cyst, [*see* DN 55 at 3, 6–7], this constitutes a "conten[tion] that more should have been done by way of diagnosis and treatment." *Estelle*, 429 U.S. at 107. However, courts have long held that "the question whether . . . additional . . . forms of treatment is indicated is a classic example of a matter for medical judgment." *Id. See also Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas,* 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner alleges only that the medical care he received was inadequate, 'federal courts are generally reluctant to second guess medical judgments.'")) In the Eighth Amendment deliberate indifferent context, it is not enough to identify "[a] mere difference of opinion between the plaintiff and his doctor regarding diagnosis and treatment." *Koos v. Corr. Corp. of Am.*, 63 F. App'x 796, 797 (6th Cir. 2003) (citing *Estelle*, 429 U.S. at 107; *Westlake,* 537 F.2d at 860 n.5). Here, Dr. Tangilag, APRN Vickery, and APRN Elam repeatedly treated King's pain with Tylenol and Ibuprofen and stated they would continue to monitor the cyst, but opined that removal was not a required treatment. [*See* DN 47 at 13, 16, 18.] Though King may disagree with those findings, absent any medical evidence from King that removal was or is necessary, the Court will not second-guess those medical judgments.

In sum, King has not demonstrated that the Defendants knew of his serious medical needs and that they deliberately disregarded those needs. Rather, "the record clearly reveals a competent and conscientious course of medical treatment, and K[ing]'s dissatisfaction with his treatment does not [establish a constitutional violation] under the Eighth Amendment." *Koos*, 63

F. App'x at 797 (citing *Estelle,* 429 U.S. at 107; *Westlake,* 537 F.2d at 860 n. 5).[5] Accordingly, Defendants' Motions for Summary Judgment, [DN 45; DN 50], are **GRANTED**.

CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** as follows:

1) Defendant Denise Burkett's Motion for Summary Judgment, [DN 45], is **GRANTED**.

2) Defendants Dr. Shastine Tangilag, Karen Vickery, APRN, and Dr. Lester Lewis's Motion for Summary Judgment, [DN 50], is **GRANTED**.

3) Defendants' Motions to Strike, [DN 56; DN 60], are **DENIED AS MOOT**.

Date:

cc: Counsel

Joshua Lane King, *pro se*
164497
Eastern Kentucky Correctional Complex
200 Road to Justice
West Liberty, KY 41472

---

[5] Because King's § 1983 claims fail on the merits, the Court need not—and will not—conduct a qualified immunity analysis [DN 45-1 at 8–11], or determine whether King properly exhausted his administrative remedies under the Prison Litigation Reform Act, [DN 50-1 at 5–6.]